**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| ANNIE L. WILLIAMS, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 2:16-CV-225-PRC |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner of the | ) | |
| Social Security Administration, | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Annie L. Williams

on June 14, 2016, and Plaintiff's Brief in Support of Reversing the Decision of the Commissioner

of Social Security [DE 14], filed by Plaintiff on December 27, 2016. Plaintiff requests that the

January 22, 2015 decision of the Administrative Law Judge denying her claim for supplemental

security income be reversed and remanded for further proceedings. On March 31, 2017, the

Commissioner filed a response, and Plaintiff filed a reply on May 1, 2017. For the following reasons,

the Court denies Plaintiff's request for remand.

**PROCEDURAL BACKGROUND**

Plaintiff filed her initial application for supplemental security income on December 17, 2012,

alleging disability since September 21, 2012. The claim was denied initially and on reconsideration,

and she requested a hearing, which was held before ALJ Janice M. Bruning (ALJ) on September 19,

2014. On January 22, 2015, the ALJ issued an unfavorable decision, making the following findings:

> 1.      The claimant has not engaged in substantial gainful activity since December
> 17, 2012, the application date.
>
> 2.      The claimant has the following severe impairments: carpal tunnel syndrome,
> depression, and degenerative changes of the cervical spine.

3.      The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

4.      After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except she cannot climb ladders, ropes, or scaffolds and no more than occasionally climb ramps/stairs, balance, kneel, stoop, crouch, crawl, bend, or twist. She can no more than frequently use her hands to finger. She should avoid concentrated exposure to wetness. She should avoid all exposure to work hazards (such as unprotected heights and dangerous moving machinery). She is limited to performing simple repeated routine tasks with no contact with the public and no more than occasional interaction with coworkers and supervisors.

5.      The claimant is unable to perform any past relevant work.

6.      The claimant was born [in 1964] and was 47 years old, which is defined as a younger individual age 18-49, on the date the application was filed.

7.      The claimant has a limited education and is able to communicate in English.

8.      Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

9.      Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

10.     The claimant has not been under a disability, as defined in the Social Security Act, since December 17, 2012, the date the application was filed.

(AR 14-20).

The Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the final decision of the Commissioner. *See* 20 C.F.R. § 416.1481. Plaintiff filed this civil action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for review of the Agency's decision.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case.

Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision

"without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate her analysis of the evidence in order to allow the reviewing court to trace the path of her reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that [a reviewing court] may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595)); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and [her] conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

## DISABILITY STANDARD

To be eligible for disability benefits, a claimant must establish that she suffers from a "disability" as defined by the Social Security Act and regulations. The Act defines "disability" as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). To be found disabled, the claimant's impairment must not only prevent her from doing her previous work, but considering her age, education, and work experience, it must also prevent her from

engaging in any other type of substantial gainful activity that exists in significant numbers in the economy. 42 U.S.C. § 1382c(a)(3)(B); 20 C.F.R. § 416.920(e)-(f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits. 20 C.F.R. § 416.920(a)(4). The steps are: (1) Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled, and the claim is denied; if no, the inquiry proceeds to step two; (2) Does the claimant have an impairment or combination of impairments that are severe? If no, the claimant is not disabled, and the claim is denied; if yes, the inquiry proceeds to step three; (3) Do(es) the impairment(s) meet or equal a listed impairment in the appendix to the regulations? If yes, the claimant is automatically considered disabled; if no, then the inquiry proceeds to step four; (4) Can the claimant do the claimant's past relevant work? If yes, the claimant is not disabled, and the claim is denied; if no, then the inquiry proceeds to step five; (5) Can the claimant perform other work given the claimant's residual functional capacity (RFC), age, education, and experience? If yes, then the claimant is not disabled, and the claim is denied; if no, the claimant is disabled. 20 C.F.R. § 416.920(a)(4)(I)-(v); *see also Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

At steps four and five, the ALJ must consider an assessment of the claimant's RFC. The RFC "is an administrative assessment of what work-related activities an individual can perform despite [her] limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001). The RFC should be based on evidence in the record. *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(3)). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski*, 245 F.3d at 885-86; *see also Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

**ANALYSIS**

Plaintiff seeks reversal and remand for further proceedings, arguing that the ALJ erred in assessing both her mental and physical residual functional capacities and in evaluating her subjective complaints. The Court considers each argument in turn.

**A. Mental Residual Functional Capacity**

For both mental and physical impairments, the residual functional capacity ("RFC") is a measure of what an individual can do despite the limitations imposed by her impairments. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004); 20 C.F.R. § 416.945(a). The determination of a claimant's RFC is a legal decision rather than a medical one. 20 C.F.R. § 416.927(e)(1); *Diaz*, 55 F.3d at 306 n.2. The RFC is an issue at steps four and five of the sequential evaluation process and must be supported by substantial evidence. SSR 96-8p, 1996 WL 374184, *3 (July 2, 1996); *Clifford*, 227 F.3d at 870.

"RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing' basis means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p at *1. "The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." SSR 96-8p, at *3. The relevant evidence includes medical history; medical signs and laboratory findings; the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment; evidence from attempts to work; need for a structured living environment; and work evaluations, if available. *Id.* at *5. In arriving at an RFC, the ALJ "must consider all allegations of physical and mental limitations or restrictions and make every reasonable effort to ensure that the file contains sufficient evidence to

6

assess RFC." *Id*. The "ALJ must also consider the combined effects of all the claimant's impairments, even those that would not be considered severe in isolation." *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009); *see also Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003).

Plaintiff argues that the ALJ erred in evaluating Plaintiff's mental RFC by not relying on a mental health evaluation, by rejecting a treating doctor's opinion, and by not supporting the RFC assessment with evidence of record.

1.     *Reliance on Mental Health Evaluations*

First, Plaintiff argues that the ALJ erred in evaluating Plaintiff's depression when she rejected the opinion of treating psychiatrist Dr. Castelino, leaving the record with no mental health evidence to support the ALJ's conclusion, and when she did not support the mental RFC assessment with evidence of record.

Plaintiff is correct that the ALJ did not adopt any particular doctor's RFC opinion, but she was not required to do so. The regulations provide that the RFC determination is the responsibility of the ALJ. *See* 20 C.F.R. § 416.946(c). Plaintiff does not identify any language in the decision that the ALJ took an "average" of the medical opinions, nor does she point to any authority that the ALJ's RFC finding must be endorsed by a doctor. An ALJ is entitled to adopt the opinion of a medical source regarding a claimant's RFC, but the ALJ's RFC finding and the medical source opinion

> are not the same thing. A medical source statement is evidence that is submitted to SSA by an individual's medical source reflecting the source's opinion based on his or her own knowledge, while an RFC assessment is the *adjudicator*'s ultimate finding based on a consideration of this opinion and all the other evidence in the case record about what an individual can do despite his or her impairment(s).

SSR 96-5p, 1996 WL 374183, *4 (1996) (emphasis added); *see also Thomas v. Colvin*, 745 F.3d 802, 808 (7th Cir. 2014) ("[T]he determination of a claimant's RFC is a matter for the ALJ alone—not a treating or examining doctor—to decide."). An ALJ "is not required to rely entirely on a particular physician's opinion or choose between the opinions of any of the claimant's physicians." *Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007).

Some courts have found that an ALJ is not permitted to construct what they call a "middle ground" RFC without a proper medical basis. *Bailey v. Barnhart*, 473 F. Supp. 2d 822, 838-39 (N.D. Ill. 2006) (finding that an ALJ that has rejected the available medical evidence upon which an RFC could be based must call a medical advisor or obtain clarification of the record); *see also Suide v. Astrue*, 371 F. App'x 684, 690 (7th Cir. 2010) (citations omitted) (finding the ALJ erred in creating an RFC after rejecting a medical opinion, failing to weigh the other opinions and reports, and failing to consider subsequent injuries to the report on which the ALJ relied). However, this is not a case in which the ALJ entirely rejected the relevant medical opinions and independently created an RFC based on an undeveloped record. *See Bailey,* 473 F. Supp. 2d at 839; *Richards v. Astrue*, 370 F. App'x 727, 730 (7th Cir. 2010). Rather, the ALJ's mental RFC assessment was supported with evidence as discussed below. Plaintiff bases this argument in part on the limitations found by Dr. Castelino. However, for the reasons set forth in the next section, the ALJ did not err in giving little weight to Dr. Castelino's opinion.

2. *Weight to Treating Physician Opinion*

Next, Plaintiff argues that the ALJ erred in giving little weight to treating physician Dr. Castelino. *See* (AR 19) (ALJ decision); (AR 419-28) (Dr. Castelino's Medical Source Statement). In determining whether a claimant is disabled, the ALJ "will always consider the medical opinions

in [the] case record together with the rest of the relevant evidence . . . received." 20 C.F.R. § 416.927(b). And, the ALJ evaluates every medical opinion received. 20 C.F.R. § 416.927(c). This includes the opinions of nonexamining sources such as state agency medical and psychological consultants as well as outside medical experts consulted by the ALJ. *Id*. § 416.927(e)(2).

An ALJ must give the opinion of a treating doctor controlling weight if (1) the opinion is supported by "medically acceptable clinical and laboratory diagnostic techniques" and (2) it is "not inconsistent" with substantial evidence of record. *Schaaf v. Astrue*, 602 F.3d 869, 875 (7th Cir. 2010); *see also Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). In weighing all opinion evidence, the ALJ considers several factors and "must explain in the decision the weight given" to each opinion. 20 C.F.R. § 416.927(e)(2)(ii), (iii); *Scrogham v. Colvin*, 765 F.3d 685, 697-98 (7th Cir. 2014); *Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008). When a treating physician's opinion is not given controlling weight, the ALJ must nevertheless consider certain factors to determine how much weight to give the opinion, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability (such as medical signs and laboratory findings), and specialization. 20 C.F.R. § 416.927(c)(2)-(5).

In reviewing Plaintiff's medical history, the ALJ noted that Plaintiff first sought treatment with Dr. Castelino, a psychiatrist, at Edgewater Mental Health Center on March 19, 2014, for complaints of depression with mood swings, hearing voices, occasional crying spells, and sleep difficulties. (AR 18 (citing AR 460)). The ALJ noted that Plaintiff was prescribed Seroquel, Cymbalta, Lamictal, and Trazodone. *Id*. (citing 439) (Aug. 13, 2014 treatment record); *see also* (AR 460) (medications plan at initial visit on March 19, 2014). The ALJ then recognized that, by August 13, 2014, Plaintiff's condition was stable with no suicidal ideation. (AR 18 (citing AR 438)). The

ALJ noted that the record stated that Plaintiff was improving on medication with no medication side effects. *Id*. (citing AR 438). Finally, the ALJ noted that Plaintiff reported at the August 13, 2014 treatment session that she had occasional sadness and crying spells but that the treatment notes showed that her mood and affect were within normal limits and that her cognitive functioning was normal. *Id*.

In the Medical Source Statement dated April 1, 2014, Dr. Castelino opined that Plaintiff had major depression with psychotic symptoms, noting that she was prescribed Seroquel and Brintellix. (AR 419). Plaintiff's prognosis was fair to guarded. *Id*. Dr. Castelino noted signs and symptoms of appetite disturbance and weight loss, decreased energy, feelings of guilt or worthlessness, generalized persistent anxiety, mood disturbance, difficulty thinking or concentrating, psychomotor retardation, apprehensive expectation, paranoid thinking, hallucinations or delusions, motor tension, flight of ideas, easy distractibility, and sleep disturbance. As for the mental ability and aptitudes needed to do unskilled work, Dr. Castelino found "limited but satisfactory" for the categories of understand and remember very short and simple instructions; carry out very short and simple instructions, maintain regular attendance and be punctual within customary, usually strict tolerances; and ask simple questions or request assistance. Dr. Castelino found "seriously limited, but not precluded" for remember work-like procedures, maintain attention for two hour segment, sustain an ordinary routine without special supervision, work in coordination with or proximity to others without being unduly distracted, make simple work-related decisions, and deal with normal work stress. Dr. Castelino marked "not applicable" for complete a normal workday and workweek without interruptions from psychologically based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; accept instructions and respond appropriately to

criticism from supervisors; get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; and respond appropriately to changes in a routine work setting. (AR 423).

For mental ability and aptitudes needed to do particular types of jobs, Dr. Castelino marked "limited but satisfactory" for adhere to basic standards of neatness and cleanliness and for use of public transportation. He marked "seriously limited, but not precluded" for interact appropriately with the general public, maintain socially appropriate behavior, and travel in unfamiliar place. (AR 425). He then wrote that Plaintiff's condition is "very chronic" and that her "overall level of functioning is very poor." *Id.* For demands of work that Plaintiff finds stressful, Dr. Castelino checked the boxes for speed, precision, complexity, working within a schedule, making decisions, exercising independent judgment, completing tasks, working with other people, dealing with the public (strangers), no opportunity for learning new things, and lack of meaningfulness of work. (AR 427). He indicated that Plaintiff would be absent more than four days a month. *Id.*

In giving little weight to this opinion, the ALJ wrote that "it was inconsistent with the evidence of record as a whole including his own treatment notes which show improvement with medication and treatment." (AR 19 (citing AR 438)). The evidence of record cited by the ALJ in the medical history supports this finding. Notably, Plaintiff started treatment with Dr. Castelino on March 19, 2014, and Dr. Castelino filled out the medical source statement just a few weeks later on April 1, 2014. However, by the August 2014 treatment note cited by the ALJ, Plaintiff showed improvement with medication and treatment, her mood and affect were within normal limits, and her cognitive functioning was normal. *See* (AR 438). In the context of the step three analysis, the ALJ noted that Dr. Castelino found that Plaintiff had no cognitive problems or problems getting lost

or disoriented. (AR 10 (citing R 452)). The ALJ also considered Plaintiff's own reports that she got along with others, could go out in public, attended church twice per week, and could retain information from the television. (AR 15-16 (citing 174-76)). And, the ALJ recognized that, at the consultative examination, Plaintiff had normal mood, affect, insight, judgment, and speech. (AR 18 (citing AR 344)). The ALJ did not err by not giving "controlling weight" to Dr. Castelino's opinion because it was not consistent with the substantial evidence of record.

Plaintiff also argues that, once the ALJ did not give controlling weight to Dr. Castelino's opinion, the ALJ was required to explicitly consider the checklist of factors in § 404.1527(c)(2). In some cases, the Seventh Circuit Court of Appeals has held that the ALJ must explicitly address the checklist of factors in the opinion in order to allow the district court to review whether the ALJ in fact considered the factors. *See Scrogham*, 765 F.3d at 697-98; *Campbell v. Astrue*, 627 F.3d 299, 308 (7th Cir. 2010); *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010); *Bauer*, 532 F.3d at 608. However, in other cases, the Seventh Circuit Court of Appeals has held that a court will "allow that decision to stand so long as the ALJ 'minimally articulate[d]' [her] reasons—a very deferential standard that [the court has], in fact, deemed 'lax.'" *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008) (citing *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008)); *see also Schreiber v. Colvin*, 519 F. App'x 951, 959 (7th Cir. 2013). In this case, Plaintiff has offered no explanation of how any further explicit consideration of the factors would change the weight given to Dr. Castelino's opinion. Like in *Schreiber*, although the ALJ did not explicitly weigh each factor in the written decision, the decision overall demonstrates that the ALJ was aware of and considered the factors. The ALJ recognized that Dr. Castelino was Plaintiff's treating physician. There do not appear to be any tests that support Plaintiff's claim of disability or Dr. Castelino'ss opinion, and Plaintiff does

not identify any. Contrary to Plaintiff's assertion that Dr. Castelino was a "long-term treating psychiatrist," (ECF 14, p. 10), Plaintiff began treating with him just three weeks prior to his opinion. While true that Dr. Castelino eventually saw Plaintiff several more times after completing the form, the relevant inquiry is the length of the treating relationship at the time he offered the opinion. The Court finds that the ALJ sufficiently accounted for the factors in § 416.927, and Plaintiff has not argued how the outcome would be different if the ALJ had been more explicit in the decision. *See Elder*, 529 F.3d at 415-16.

Finally, the ALJ also gave some weight to the state agency consultants who opined in March 2013 and May 2013 that Plaintiff did not have a medically determinable mental impairment. Plaintiff did not allege any mental health impairment until March 2014. Having considered all the evidence of record, the ALJ found that Plaintiff has the severe impairment of depression and included limitations in the RFC.

*3.     Concentration, Persistence, and Pace*

Plaintiff contends that the ALJ erred by finding that she had moderate limitations in concentration, persistence, or pace but then failed to properly analyze the limitations by including only a limitation to "simple repeated routine tasks" in the RFC. (AR 15-16). Plaintiff argues that this is reversible error because the ALJ must expressly refer to limitations in concentration, persistence, or pace in the hypothetical questions posed to the vocational expert. (ECF 14, p. 12 (citing *O'Connor-Spinner*, 627 F.3d at 620; *Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009); *Craft*, 539 F.3d at 677-78; *Kasarsky v. Barnhart*, 335 F.3d 539, 544 (7th Cir. 2002); *Ramirez v. Barnhart*, 372 F.3d 546, 554 (3d Cir. 2004)).

"As a general rule, both the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record." *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014) (citing *O'Connor-Spinner*, 627 F.3d at 620-21 ("Our cases, taken together, suggest that the most effective way to ensure that the VE is apprised fully of the claimant's limitations is to include all of them directly in the hypothetical.")). This includes any deficiencies of concentration, persistence, or pace. *Id.* (citing *O'Connor-Spinner*, 627 F.3d at 619; *Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009) (collecting cases)). The Seventh Circuit Court of Appeals has often found that a limitation to work involving short, simple, and repetitive tasks does not adequately account for moderate limitations in concentration, persistence, or pace because the "ability to stick with a given task over a sustained period is not the same as the ability to learn how to do tasks of a given complexity." *O'Connor-Spinner*, 627 F.3d at 620 (citing *Kasarsky*, 335 F.3d at 544; SSR 85-15, 1985 WL 56857 (1985)); *see also Yurt*, 758 F.3d at 858-59 ("We have repeatedly rejected the notion that a hypothetical . . . confining the claimant to simple, routine tasks and limited interactions with others adequately captures temperamental deficiencies and limitations in concentration, persistence, or pace."); *Ingle v. Colvin*, 14-CV-413, 2016 WL 270006, at * 7-8 (S.D. Ind. Jan. 22, 2016) ("[A] limitation to simple, routine and repetitive tasks does not adequately account for a moderate limitation in maintaining concentration, persistence, or pace.").

In this case, the ALJ built a logical bridge between her finding that Plaintiff is moderately limited in concentration, persistence, or pace and the limitation to "simple repeated routine tasks." At step three, the ALJ found that Plaintiff had moderate limitations in social functioning and in concentration, persistence or pace. (AR 15). But, at step four, the ALJ translated this into a limitation to "simple repeated routine tasks." (AR 16). In doing so, the ALJ considered evidence that

Plaintiff had intact memory, comprehension, and judgment. (AR 17 (citing AR 220)). The ALJ also noted that Plaintiff had normal mood and affect and was alert and oriented in September 2012 despite being acutely intoxicated when she went to the emergency room. (AR 17 (citing AR 263)). The ALJ noted that Plaintiff was again alert and oriented at a visit in December 2012. (AR 18 (citing AR 290)). The ALJ further noted that, at the consultative examination on March 5, 2013, Plaintiff complained of memory loss and poor concentration but that, on examination, Dr. Smejkal found that Plaintiff was alert, oriented, and cooperative with normal intellectual functioning and an intact memory and had normal speech, mood, affect, and insight and judgment. (AR 18 (citing AR 341-44)). Finally, the ALJ noted that Plaintiff's symptoms improved with medication and that she had normal cognitive functioning, mood, and affect in August 2014 (AR 18 (citing AR 438)).

The medical evidence of record cited by the ALJ supports the RFC limitation to accommodate her deficits in concentration, persistence, or pace. Plaintiff has not identified any evidence or testimony indicating that her moderate limitations in concentration, persistence, or pace require different restrictions in the RFC than those assessed by the ALJ. The hypothetical to the vocational expert assumed a limitation to "one to two step simple, repeated, routine tasks." (AR 45-46). Thus, the hypothetical properly incorporated the limitations included in the RFC.

*4.*     *Contact with Public, Coworkers, and Supervisors*

Finally, the ALJ found a limitation of no contact with the public and occasional contact with co-workers and supervisors. (AR 16). Plaintiff argues that the ALJ failed to explain the evidentiary basis for this limitation in the RFC assessment based on a finding of moderate restrictions in social interactions. The Court disagrees. The ALJ explained that she added the limitations in social functioning to the RFC based on Plaintiff's more recent complaints of depression and hallucinations.

(AR 19). The ALJ considered Plaintiff's own admissions that she gets along with others. (AR 15, 19 (citing (AR 175-76)). The ALJ also noted that Plaintiff goes out in public to shop, eat, and attend church twice per week. *Id*. And, the ALJ considered the mental status examination showing that Plaintiff was cooperative. (AR 18 (citing AR 342)). Plaintiff does not identify any further evidence or testimony demonstrating restrictions greater than those imposed by the ALJ.

Remand is not required based on the mental residual functional capacity assessment.

### B. Physical Residual Functional Capacity

Plaintiff next argues that the ALJ erred in formulating her physical RFC by not finding limitations on hand use, by rejecting a treating nurse's opinion in violation of SSR 06-03p, and by not considering all of the evidence.

*1.  Limitations on Hand Use*

Handling, which includes seizing, holding, grasping, turning, or otherwise working primarily with the whole hand or hands, is required in almost all jobs. SSR 85-15, 1985 WL 56857, *18 (Jan. 1, 1985). The Ruling explains that, "*[s]ignificant* limitations of . . . handling, therefore, may eliminate a large number of occupations a person could otherwise do." *Id*. "Varying degrees of limitations would have different effects. . . ." *Id*. (emphasis added). In the RFC, the ALJ found that Plaintiff "can no more than frequently use her hands to finger." (AR 16). Plaintiff argues that this limitation contradicts the evidence and the ALJ's finding of severe carpal tunnel syndrome because the ALJ did not include any limitation on "handling."

In reviewing the medical evidence, the ALJ noted Plaintiff's appointment on December 19, 2012, which was for follow up for her bilateral carpal tunnel syndrome (primary encounter diagnosis). (AR 17). The ALJ noted that Plaintiff reported pain and numbness of the hands but that

the doctor noted no swelling or effusion. (AR 18 (citing 291-92)). The ALJ also noted that Plaintiff was not wearing wrist braces. The ALJ included Dr. Smejkal's finding of 3/5 hand grip strength bilaterally and that Plaintiff had normal coordination and was able to perform fine manipulations. (AR 18). However, the ALJ found that the extent of Plaintiff's allegations of hand limitations were "not supported by the evidence of record." (AR 18). More specifically, the ALJ noted that, "[w]hile [Plaintiff] complained that she cannot use her hands, her doctors reported normal use of the hands." (AR 18). The ALJ noted that Plaintiff carried and held onto a bag of medication at the hearing. (AR 18-19). Earlier, at step three, the ALJ noted that Plaintiff can use her upper extremities for fine and gross manipulation and that her handgrip was 3-4/5, that she had negative Tinel and Phalen signs, and that she had range of motion of the upper extremities.

To contradict the ALJ's factual findings, Plaintiff notes the physical RFC questionnaire completed by treating family nurse practitioner Quinn West on July 26, 2013, in which West wrote that Plaintiff was diagnosed with bilateral carpel tunnel weakness and "bilateral pain to wrist." (AR 355). Ms. West wrote that Plaintiff had trouble holding objects and that Plaintiff stated that the pain was "really bad." *Id*. Ms. West further reported that Plaintiff feels stinging pain in both wrists. *Id*. And, Ms. West checked "yes" for "significant limitations with reaching, handling, or fingering." (AR 356). Ms. West opined that Plaintiff could not use her hands at all for grasping, turning, and twisting objections. (AR 356). As noted in the next section, the ALJ properly gave little weight to this extreme opinion.

Plaintiff also notes that she was prescribed Gabapentin and Ibuprofen for her wrist pain and Cyclobenzaprine for spasms, as needed. (AR 381). This does not contradict the ALJ's limitation on fingering. Plaintiff notes that, at the consultative examination, Dr. Smejkal found abnormal grip

strength of 3/5 and noted that, while Plaintiff could engage in fine finger manipulation, such as buttoning, zipping, and picking up coins, she could not do so repetitively. (AR 351). However, the ALJ noted this in her analysis. Also, at the hearing, which was held by video, Plaintiff's attorney described for the ALJ that Plaintiff "has her hands like a claw. She's not fully resting them on the table." (AR 43). But, again the ALJ noted her own observation that Plaintiff held a bag of medication in her hand throughout the hearing.

Importantly, Plaintiff ignores the ALJ's reliance on the opinions of the state agency consultants, which directly support the ALJ's findings regarding handling and fingering limitations. On March 11, 2013, Dr. Brill opined that Plaintiff could only frequently, and not constantly, perform fingering. (AR 56-57). Dr. Brill reasoned that, although Plaintiff had abnormal grip, she was still able to button, zip, and pick up coins, although not repetitively. (AR 57). And, Dr. Brill opined that Plaintiff had *no limitations in handling*. (AR 57). State agency consultant Dr. Whitley affirmed Dr. Brill's opinion on May 27, 2013. The ALJ gave these opinions some weight because they are consistent with the medical evidence. (AR 19). Plaintiff does not discuss these opinions or the ALJ's reliance on them.

The ALJ did not err in assessing Plaintiff's limitations on handling, as she considered the record evidence and relied on the opinions of the state agency consultants, which Plaintiff neither acknowledges nor contests.

2.      *Treating Nurse's Opinion*

Pursuant to SSR 06-03p, the ALJ must consider "all of the other available evidence in the individual's case record," including "information from other 'non-medical sources.'" SSR 06-03p, 2006 WL 2329939, *1 (Aug. 9, 2006). This includes nurse practitioners. Their findings cannot

establish the existence of a medically determinable impairment, but their opinions must nevertheless be considered. In weighing these opinions, the ALJ must consider the factors from 20 C.F.R. § 416.927 listed above. Plaintiff argues that the ALJ failed to properly weigh the opinion of treating family nurse practitioner West.

The ALJ gave little weight to the medical source statement of family nurse practitioner West on the basis that she was not an acceptable medical source. (AR 19). Unlike in *Ashe v. Colvin*, No. 2:14-CV-363, 2016 WL 1056054, at *2 (N.D. Ind. Mar. 17, 2016), cited by Plaintiff, in which the ALJ failed to include an analysis of the factors from § 416.927, the ALJ in this case considered the degree to which Ms. West's opinion is supported by other evidence of record. The ALJ found that the medical records do not show the limitations described by West. (AR 19 (citing 3F and 11F)). The ALJ noted that there were not any neurological deficits at the May 29, 2014 office visit. (AR 19 (citing AR 433) (Phalen test and Tinel's test negative)). And, the ALJ wrote that the record shows that Plaintiff can use her hands. (AR 19). The ALJ was not required to discuss every factor.

Plaintiff reasons that Ms. West's opinion was supported by other evidence, including Plaintiff's own testimony that she has trouble using her hands, that Plaintiff could not get carpal tunnel surgery as advised by a doctor because she could not afford it, and that she has trouble getting dressed in the morning. Plaintiff also notes Dr. Smejkal's impression of abnormal grip strength at 3/5 and Plaintiff's trouble in engaging in repeated fine finger manipulation. But the ALJ noted all these facts as well in weighing the evidence. The Court finds that the ALJ sufficiently articulated the reasons for the weight given to the opinion of Ms. West, and remand is not required on this basis.

3.    *Combination of Impairments*

Plaintiff argues that the ALJ failed to consider the combination of Plaintiff's impairments. Although Plaintiff cites law regarding the requirement that an ALJ consider a claimant's severe and non-severe impairments in combination, Plaintiff does not explain how the combination of her carpal tunnel syndrome, depression, and degenerative changes of the cervical spine, in combination with her non-severe impairments could have resulted in greater limitations in her RFC. This undeveloped argument is not persuasive.

4.    *Side Effects of Medications and Migraines*

Last, Plaintiff argues that the ALJ failed to address Plaintiff's allegations that her medications make her fall asleep during the day and that she has daily migraines.

As for her medications making her fall asleep, Plaintiff testified that she sleeps during the day because her medications make her sleepy and drowsy. (AR 38). The only other record she cites is the March 24, 2014 treatment record of her psychiatrist, Dr. Castelino, in which he notes generally, "I also discussed about the compliance with treatment and possible side effect due to meds." (AR 416). However, on the same page, Dr. Castelino marked "none" under "medication side effects." *Id.* The ALJ noted in her decision that, although Plaintiff alleged side effects from her medications, Dr. Castelino's March 17, 2014 treatment record noted no medication side effects, (AR 454), and that no side effects were noted in the December 19, 2012 office visit with Ms. West or in the May 29, 2014 office visit with nurse Valerie Robinson-Royal, (AR 289, 433). The ALJ did not err in assessing this evidence.

As for migraines, Plaintiff testified that sometimes she does not go to church because she has migraines, and she testified that she has migraines every day, which she treats with medication. (AR

40). Plaintiff also notes her treatment record at Methodist Hospital from May 21, 2012, through May 25, 2012, when she was admitted to the hospital after falling while intoxicated and hitting her head; in this note, Plaintiff reports a headache. (AR 202). She also notes Dr. Smejkal's consultative examination in which he notes that Plaintiff self reported a history of daily headaches with nausea and vomiting and sensitivity to sound and light. (AR 352). Finally, Plaintiff cites the March 24, 2014 treatment record of her psychiatrist, Dr. Castelino, in which he noted her report of "severe headaches." (AR 417). In her analysis, the ALJ found that "there is no evidence of migraines documented in the record" and found them nonsevere. (AR 14). With the exception of the hospital treatment record for hitting her head, the other record citations are of self-reported histories of headaches to doctors Plaintiff was seeing for other purposes. Plaintiff points to no treatment records for migraines. The ALJ did not err in her consideration of Plaintiff's allegations of migraines.

## C. Credibility Determination

On March 28, 2016, Social Security Ruling 16-3p became effective and issued new guidance regarding the evaluation of a disability claimant's statements about the intensity, persistence, and limiting effects of symptoms. *See* SSR 16-3p, 2016 WL 1237954 (Mar. 28, 2016). Under SSR 16-3p, an ALJ now assesses a claimant's subjective symptoms rather than assessing her "credibility." However, SSR 16-3p is not retroactive; therefore, the "credibility determination" in the ALJ's January 22, 2015 decision is governed by the standard of SSR 96-7p.

In making a disability determination, the ALJ must consider a claimant's statements about her symptoms, such as pain, and how the symptoms affect her daily life and ability to work. *See* 20 C.F.R. § 416.929(a). Subjective allegations of disabling symptoms alone cannot support a finding

of disability. *Id.* The ALJ must weigh the claimant's subjective complaints, the relevant objective medical evidence, and any other evidence of the following factors:

(1) The individual's daily activities;
(2) Location, duration, frequency, and intensity of pain or other symptoms;
(3) Precipitating and aggravating factors;
(4) Type, dosage, effectiveness, and side effects of any medication;
(5) Treatment, other than medication, for relief of pain or other symptoms;
(6) Other measures taken to relieve pain or other symptoms;
(7) Other factors concerning functional limitations due to pain or other symptoms.

*See* 20 C.F.R. § 416.929(c)(3). "Because the ALJ is in the best position to determine a witness's truthfulness and forthrightness . . . a court will not overturn an ALJ's credibility determination unless it is 'patently wrong.'" *Shideler*, 688 F.3d at 310-11 (quotation marks omitted) (quoting *Skarbek*, 390 F.3d at 504-05); *see also Prochaska*, 454 F.3d at 738. Nevertheless, "an ALJ must adequately explain [her] credibility finding by discussing specific reasons supported by the record." *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013) (citing *Terry*, 580 F.3d at 477); SSR 96-7p, 1996 WL 374186, at *2 (Jul. 2, 1996) ("The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.").

Plaintiff argues that the ALJ erred in finding Plaintiff "not entirely credible" when the ALJ failed to discuss which statements were not credible and by not addressing the factors listed in 96-7p. However, the ALJ explained several of the factors in her decision, including Plaintiff's allegations of mental and physical limitations, the inconsistency of her allegations with the objective medical evidence, the inconsistency of Plaintiff's testimony with her own statements, the ALJ's

observations of Plaintiff at the hearing, Plaintiff's treatment history, some of her activities of daily living, and the opinions of record. (AR 17).

Plaintiff offers three examples of evidence the ALJ should have considered. First, Plaintiff argues that the ALJ failed to consider her alleged activities of daily living, including her testimony that she is unable to cook, wash dishes, clean laundry, make her bed, clean the house, take out the garbage, or complete yard work. (AR 38-39). However, the ALJ considered many other reported daily activities, including that it is difficult for Plaintiff to get dressed, that she does not drive, and that she uses a motorized cart to shop. The ALJ is not required to discuss every piece of evidence in the record, and Plaintiff does not explain how a discussion of these additional daily activities would change the credibility determination. Second, Plaintiff argues that the ALJ did not consider the side effects of medications; as noted above, the record does not support Plaintiff's allegation of side effects. Finally, Plaintiff argues that the ALJ did not consider Plaintiff's attempts to relieve pain, including Acetaminophen, NSAIDs, position changes, relaxation, and rest. (AR 385). However, the cited November 5, 2012 treatment note explains that Plaintiff had tried these medications for symptoms related to chronic leg pain, which is not an impairment at issue on this appeal. *Id*. The ALJ's credibility determination is not patently wrong.

## CONCLUSION

Based on the foregoing, the Court hereby **DENIES** the relief sought in Plaintiff's Brief in Support of Reversing the Decision of the Commissioner of Social Security [DE 14]. The Court **DIRECTS** the Clerk of Court to **ENTER JUDGMENT** in favor of Defendant and against Plaintiff.

So ORDERED this 27th day of September, 2017.

s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT